FILED

2026 Mar-27  PM 12:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SECRETARY OF LABOR,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.:  5:24-cv-01352-MHH** |
| | } | |
| **GLEASON RESEARCH** | } | |
| **ASSOCIATES, INC., et al.,** | } | |
| | } | |
| **Defendants.** | } | |
| | } | |

## MEMORANDUM OPINION AND ORDER

This is an action under the Employee Retirement Income Security Act of 1974—ERISA, 29 U.S.C. § 1001 *et seq.*  Plaintiff Lori Chavez-DeRemer, Secretary of the United States Department of Labor, alleges that defendants Charles Vessels, James Kelley, and Brenda Showalter breached their duties of loyalty and prudence as fiduciaries and designated plan administrators of the Gleason Research Associates, Inc. Employee Stock Ownership Plan. (Doc. 1, pp. 2–3, ¶ 1–3).[1]  The Secretary also alleges that defendant Gleason Research Associates, Inc., the plan administrator, failed to monitor the plan's fiduciaries.  (Doc. 1, p. 3, ¶ 4).  Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the defendants have asked

---

[1] Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Secretary of Labor Lori Chavez-DeRemer is automatically substituted as the plaintiff in this action.

1

the Court to dismiss the Secretary's claims, arguing that the claims "are either based on discredited legal theories, deficiently pleaded, or otherwise invalid as a matter of law." (Doc. 11, p. 3).

To address the defendants' motion, the Court first summarizes the procedural standard for Rule 12(b)(6) motions to dismiss. Applying those standards, the Court then summarizes the Secretary's factual allegations, viewing the allegations in the light most favorable to the Secretary. Finally, the Court examines those allegations under the substantive law concerning ERISA and determines whether the Secretary has stated plausible ERISA claims in her complaint.

*** 

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint against the "liberal pleading standards set forth by Rule 8(a)(2)." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pursuant to Rule 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Generally, to withstand a Rule 12(b)(6) motion to dismiss, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 570 (2007). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of

2

what the . . . claim is and the grounds upon which it rests.'" *Erickson*, 551 U.S. at 93 (quoting *Twombly*, 550 U.S. at 555).

When evaluating a Rule 12(b)(6) motion to dismiss, a district court accepts as true the factual allegations in the complaint and construes those allegations in the light most favorable to the plaintiff. *McCullough v. Finley*, 907 F.3d 1324, 1330 (11th Cir. 2018). "[C]onclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010).

***

Gleason Research Associates, Inc. is a privately-owned company that specializes in engineering and scientific consulting. (Doc. 1, p. 6, ¶ 14). The company provides logistical support and engineering and analytical services for the development and integration of advanced weapons systems. (Doc. 1, p. 6, ¶ 14). The Huntsville-based company serves the United States Department of Defense and other government agencies. (Doc. 1, p. 6, ¶ 14).

Effective January 1, 2015, Gleason established an Employee Stock Ownership Plan through a written plan document. (Doc. 1, p. 6, ¶ 16). The ESOP holds shares of Gleason's stock. (Doc. 1, p. 6, ¶ 16). Gleason is designated as the plan administrator and has authority to appoint a committee to oversee the management of the ESOP. (Doc. 1, p. 6, ¶ 17). According to the plan document—the Plan—the

3

plan administrator must manage the ESOP solely in the interest of participating employees and their beneficiaries. (Doc. 1, pp. 4, 6–7, 27–28, ¶¶ 9, 17, 113–116; Doc. 11-1, p. 19). A trustee selected by the company's Board of Directors oversees the assets and investments of the ESOP. (Doc. 1, p. 7, ¶ 20). Under the Plan, the ESOP's fiduciaries must comply with ERISA. (Doc. 1, p. 7, ¶ 22).

On December 18, 2015, Gleason's Board of Directors selected Charles Vessels, James Kelley, and Brenda Showalter to serve as members of the ESOP Committee. (Doc. 1, p. 7, ¶ 18).[2] As the acting plan administrators and named fiduciaries, Mr. Vessels, Mr. Kelley, and Ms. Showalter held the discretionary power and responsibility to manage the ESOP. (Doc. 1, pp. 4–7, ¶¶ 11–13, 18; Doc. 22-1, p. 3, art. IV(a)).

Also on December 18, 2015, for a total purchase price of approximately $21.5 million, or $33.08 per share, the ESOP acquired 100% of Gleason's outstanding shares from two individuals, Mary Yates and Thomas Gleason. (Doc. 1, p. 8, ¶ 23). The ESOP financed this purchase through a loan from Gleason, which was to be repaid over a period of 25 years using annual contributions from the company to the plan. (Doc. 1, p. 9, ¶ 26). As part of the transaction, Gleason's management,

---

[2] Mr. Vessels was President and Chief Executive Officer of Gleason and served as a member of the Board of Directors. (Doc. 1, ¶ 11). Mr. Kelley was Gleason's Chief Financial Officer. (Doc. 1, ¶ 12). Ms. Showalter was Gleason's Chief Operating Officer and served as a member of the Board of Directors. (Doc. 1, ¶ 13).

4

including Mr. Vessels, Mr. Kelley, and Ms. Showalter, bought 150,000 stock warrants from Gleason for a total of $748,000. (Doc. 1, p. 10, ¶ 29). These warrants gave the holders the right to buy Gleason's shares for $4.30 per share. (Doc. 1, p. 10, ¶ 29). In addition, Gleason implemented a Stock Appreciation Rights Plan. (Doc. 1, p. 10, ¶ 30). Mr. Vessels and Ms. Showalter each received 20,000 stock appreciation rights, and Mr. Kelley received 10,000 stock appreciation rights; Mr. Vessels, Mr. Kelley, and Ms. Showalter later received a total of 32,000 additional SARs. (Doc. 1, pp. 10–11, ¶¶ 30–31).

In July 2016, Mr. Vessels, Ms. Showalter, and Paula Cushman became the sole members of Gleason's Board of Directors. (Doc. 1, p. 6, ¶ 15). On August 1, 2017, Gleason appointed Neil M. Brozen as the ESOP trustee, replacing Wilmington Trust, N.A. (Doc. 1, p. 7, ¶¶ 20–21).

On December 1, 2017, the Board amended Gleason's articles to authorize the issuance of up to three million shares of common stock. (Doc. 1, p. 12, ¶ 36). As the ESOP trustee, Mr. Brozen reviewed and authorized the amendment. (Doc. 1, p. 12, ¶ 36). Under Mr. Vessels's signature, the Board amended the Plan to allow employees to transfer assets from their 401(k) accounts into the ESOP, subject to the plan administrator's approval. (Doc. 1, p. 12, ¶ 37).

On December 15, 2017, the ESOP bought 441,963 newly-issued shares from Gleason at $8.39 per share, for a total of approximately $3.7 million. (Doc. 1, p. 13,

5

¶ 41). Mr. Kelley communicated this share price to employees in October 2017, before employees received a formal valuation report from the firm Stout Risius Ross, LLC. (Doc. 1, p. 13, ¶ 40). Most employees participating in the transaction were subject to investment limits due to their status as non-accredited investors under federal securities regulations. (Doc. 1, p. 13, ¶ 43). Mr. Vessels, Mr. Kelley, Ms. Showalter, and Sharlene Bierbaur qualified as accredited investors and transferred $2.4 million from their 401(k) accounts into the ESOP and received 65% of the newly issued shares. (Doc. 1, pp. 13–14, ¶ 44). These shares were allocated to their ESOP accounts and vested immediately. (Doc. 1, pp. 13–14, ¶ 44). Mr. Vessels authorized Gleason's participation in the 2017 stock purchase transaction, while Mr. Brozen, in his capacity as the trustee, provided approval on behalf of the ESOP. (Doc. 1, p. 14, ¶ 45).

On July 23, 2021, Gleason's Board of Directors approved the purchase of the 150,000 stock warrants held by members of Gleason's management, including all the warrants issued to Mr. Vessels, Mr. Kelley, and Ms. Showalter. (Doc. 1, p. 15, ¶ 54). Under the terms of the warrant agreements, redemption payments were to be made based on the difference between the exercise price ($4.30) and the fair market value of the shares, as determined by an independent valuation. (Doc. 1, p. 16, ¶¶ 55–57). In its annual valuation report on December 31, 2020, Stout stated that the fair market value of Gleason's stock was $13.55 per share. The Board of Directors

and members of management who held warrants agreed to redeem them.  (Doc. 1, p. 16, ¶ 58).   Based on the December 31, 2020 valuation report, the redemption payments should have been $9.25 per share, but Gleason instead paid $26.27 per share.  (Doc. 1, p. 16, ¶ 59).  Mr. Vessels and Ms. Showalter, acting as members of the Board of Directors, approved the warrant payments issued to Mr. Vessels, Ms. Showalter, and Mr. Kelley.  (Doc. 1, p. 17, ¶ 62).

Also on July 23, 2021, Gleason's Board of Directors authorized the purchase of 50,000 SARs issued under the stock appreciation rights plan to Mr. Vessels, Ms. Showalter, and Mr. Kelley.  (Doc. 1, p. 17, ¶ 64).  Under the stock appreciation plan, the redemption value of SARs is the difference between the SAR value ($4.30) and the fair market value ($13.35, based on Stout's April 2021 valuation).  (Doc. 1, p. 18, ¶¶ 65–68).  Accordingly, the redemption payments should have been $9.25 per SAR, but Gleason instead paid $25.36 per SAR. (Doc. 1, p. 18, ¶¶ 69–70).  Mr. Vessels and Ms. Showalter, acting as members of the Board of Directors, approved the payment.  (Doc. 1, p. 19, ¶ 72).

***

To establish a claim for breach of fiduciary duty under ERISA, the Secretary must show that the defendants held a fiduciary role under an ERISA plan; the defendants violated their fiduciary duty; these actions took place while the defendants were acting in their fiduciary capacity; and because of the breach, the

7

ERISA plan experienced harm or incurred a financial loss. *See Pizarro v. Home Depot, Inc.*, 111 F.4th 1165, 1173 (11th Cir. 2024); *Pension & Emp. Stock Ownership Plan Admin. Comm. of Cmty. Bancshares, Inc. v. Patterson*, 547 F. Supp. 2d 1230, 1238 (N.D. Ala. 2008) (citations omitted); *Chelf v. Prudential Ins. Co. of Am.*, 31 F.4th 459, 464 (6th Cir. 2022); *Brosted v. Unum Life Ins. Co. of Am.*, 421 F.3d 459, 465 (7th Cir. 2005). "[N]on-fiduciaries cannot be held liable under ERISA." *Baker v. Big Star Div. of the Grand Union Co.*, 893 F.2d 288, 289 (11th Cir. 1989).

In support of their motion to dismiss, the defendants argue that the Secretary has not plausibly alleged that Mr. Vessels, Mr. Kelley, and Ms. Showalter acted in a fiduciary capacity in connection with the 2017 stock purchase transaction. (Doc. 11, p. 2). The defendants contend that Mr. Brozen, the trustee, had the exclusive authority to approve the 2017 stock purchase transaction on the ESOP's behalf. (Doc. 11, p. 2). Additionally, the defendants contend that Mr. Vessels and Ms. Showalter's service as members of the Gleason Board, standing alone, is insufficient to establish fiduciary status under ERISA. (Doc. 11, p. 2).

In the complaint, the Secretary asserts that Mr. Vessels, Mr. Kelley, and Ms. Showalter were fiduciaries of the ESOP and, as such, had to manage and administer the ESOP. (Doc. 1, p. 1, ¶ 1). Under the terms of the Plan, "[t]he Employer shall be the Administrator" and "may appoint a committee to perform the duties of the

Administrator in whole or in part." (Doc. 11-1, p. 14, § 2.2).[3]  It is undisputed that, on December 18, 2015, Gleason's Board of Directors appointed Mr. Vessels, Mr. Kelley, and Ms. Showalter to the ESOP Committee.  (Doc. 22-1, p. 8).   In their written acceptance of their appointments as members of the ESOP Committee, Mr. Vessels, Mr. Kelley, and Ms. Showalter acknowledged that the ESOP Committee was a named fiduciary of the Plan.  (Doc. 22-1, p. 8).  Under ERISA, individuals who exercise discretionary authority or control with respect to the management of a plan or its assets or have discretionary authority or responsibility in the administration of the plan are deemed fiduciaries.  29 U.S.C. § 1002(21)(A).  Based on this statutory authority, the Secretary's allegations, and the Plan documents, the Secretary properly has pleaded that Mr. Vessels, Mr. Kelley, and Ms. Showalter owed fiduciary obligations to the ESOP and its participants and beneficiaries.

The defendants argue that even if Mr. Vessels, Mr. Kelley, and Ms. Showalter were fiduciaries in the abstract, they lacked power to direct the trustee, who was solely responsible for approving the 2017 stock purchase transaction.  (Doc. 17, pp.

---

[3] The Plan and other plan documents discussed in this opinion are incorporated by reference in the Secretary's complaint, so the Court does not have to convert the defendants' motion to dismiss into a motion for summary judgment to consider the documents. *See Swinford v. Santos*, 121 F.4th 179, 187 (11th Cir. 2024) (citation omitted) ("Under the incorporation-by-reference doctrine, a district court may consider evidence attached to a motion to dismiss without converting the motion into a motion for summary judgment 'if the document is (1) central to the plaintiff's claim; and (2) undisputed, meaning that its authenticity is not challenged.'"), *cert. denied*, 146 S. Ct. 204 (2025)

17–26).  The Secretary contends that as ESOP Committee members, Mr. Vessels, Mr. Kelley, and Ms. Showalters had power to direct the ESOP's trustee and authorized the 2017 Stock Purchase Transaction.  (Doc. 1, p. 6–8, ¶ 17–18, 53; *see also* Doc. 11-6 at 6–7, 30 § 1.1 & sched. 1 (providing trustee was generally subject to direction of the plan administrator); (Doc. 11-7, p. 4, § 4.8(a)) (providing that the consent of the plan administrator was necessary to transfer funds from 401(k) plans to the ESOP)).

The defendants also argue that the Secretary has not alleged a plausible violation of ERISA in connection with the 2017 stock purchase transaction.  (Doc. 11, p. 2).  They assert that the Secretary has not presented facts indicating that the price paid for the newly-issued shares was improper or inadequate.  (Doc. 11, p. 2). The Secretary alleges that Mr. Vessels, Mr. Kelley, and Ms. Showalter, in their role as ESOP Committee members, authorized the issuance of Gleason's stock at $8.39 per share, significantly less than the $33.08 per share paid by ESOP participants to release the shares.  (Doc. 1, p. 20, ¶¶ 78–79).  The Secretary asserts that the transaction diluted the equity interests of Plan participants without providing compensation or protection to mitigate such dilution.  (Doc. 1, p. 20, ¶ 79).  These facts support a plausible inference that the defendants violated their duty of loyalty under ERISA.  *See* 29 U.S.C. § 1104(a)(1).  At this stage, the Secretary does not have to prove these violations; the Secretary only must allege sufficient factual

10

matter to raise a reasonable expectation that discovery will reveal evidence of wrongdoing. Her pleading meets that threshold.

Likewise, ERISA prohibits self-dealing and prevents fiduciaries from engaging in transactions where they have a conflict of interest. 29 U.S.C. § 1106(a)–(b). The Secretary sufficiently alleges that Mr. Vessels, Mr. Kelley, and Ms. Showalter benefitted from discounted stock acquisitions in violation of ERISA's prohibition on self-dealing.

The defendants challenge the Secretary's allegations not only with respect to the 2017 share transactions but also with respect to the December 2021 transactions. (Doc. 11, p. 2). The Secretary alleges that Mr. Vessels and Ms. Showalter, through their decisions as Board members, caused Gleason to redeem these defendants' warrants and stock appreciation rights at inflated prices, and the Secretary alleges that Mr. Kelley benefited similarly. (Doc. 1, p. 24, ¶ 101). As ESOP Committee members, these three defendants did not prevent or correct these overpayments, which harmed the ESOP's economic interests. (Doc. 1, p. 24, ¶ 102). These allegations raise a reasonable inference that the individual defendants breached their fiduciary duties by prioritizing their financial gain over the interests of the ESOP participants and violated ERISA's duties of loyalty and prudence. 29 U.S. Code § 1104(a).

11

At this stage, these well-pleaded factual allegations are sufficient to support claims that the individual defendants harmed the ESOP such that the defendants must restore the Plan's losses and disgorge any profits.  29 U.S.C. § 1109(a).

Finally, the defendants assert that the claims for co-fiduciary liability against Mr. Kelley and for failure to monitor against Gleason are derivative of the primary fiduciary breach claims and should be dismissed if Counts I through III fail.  (Doc. 11, p. 3).  Because the primary claims for fiduciary breach in Counts I through III will proceed, the derivative claims for co-fiduciary liability and failure to monitor also survive.

As Chief Financial Officer, Mr. Kelley was familiar with Gleason's financial condition and the value of its stock, and he reviewed the annual Stout valuations that assessed Gleason's stock value.  (Doc. 1, p. 26, ¶ 106).  The Secretary alleges that Mr. Kelley, as a member of the ESOP Committee, knew that Mr. Vessels and Ms. Showalter had fiduciary obligations to the ESOP and that they caused Gleason to purchase Mr. Kelley's warrants and stock appreciation rights at inflated prices not supported by the relevant valuations.  (Doc. 1, p. 26, ¶ 107–108).  These allegations demonstrate that Mr. Kelley was aware of the fiduciary breaches committed by Mr. Vessels and Ms. Showalter and failed to take reasonable steps to prevent or remedy them.  A fiduciary who knowingly participates in or conceals breaches committed by other fiduciaries can be held liable for those violations.  29 U.S. Code § 1105(a).

12

Mr. Kelley's alleged conduct of enabling and failing to address these breaches, while profiting from the transactions, supports a plausible claim for breach of fiduciary duty and liability to restore losses and disgorge profits. *See* 29 U.S. Code § 1109(a).

Similarly, the Secretary's claim against Gleason is plausible because the Secretary sets forth specific factual allegations that, taken as true, establish a viable theory of fiduciary breach based on Gleason's failure to monitor other fiduciaries. Under ERISA, a fiduciary who has the authority to appoint other fiduciaries has a corresponding duty to monitor their performance. *See ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1012 (11th Cir. 2003) (stating that "[c]ertain persons, including those who 'exercise[ ] any authority or control respecting management or disposition of [fund] assets,' bear fiduciary responsibility to an ERISA fund.").

The Secretary alleges that Gleason, as the named plan administrator under the Plan, appointed Mr. Vessels, Ms. Showalter, and Mr. Kelley to the ESOP Committee and was therefore obligated to oversee their conduct. (Doc. 1, p. 28, ¶ 116). The Secretary alleges that Gleason failed to carry out this oversight function, allowing the appointed fiduciaries to engage in fiduciary breaches and prohibited transactions. (Doc. 1, p. 28, ¶ 117). Additionally, the Secretary asserts that Gleason failed to take corrective action after those breaches occurred. (Doc. 1, p. 28, ¶ 118). These allegations, viewed in the light most favorable to the Secretary, are sufficient to state a plausible claim for relief, as they support the inference that Gleason's failure to

13

monitor and respond to known or knowable misconduct contributed to losses suffered by the ESOP.  29 U.S.C. § 1109(a).

***

For the reasons discussed in this order, the Court denies the defendants' motion to dismiss. The Clerk of Court shall please TERM Doc. 11.

**DONE** and **ORDERED** this March 27, 2026.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

14